UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALONDRA BERENICE MEDINA ROMERO,

Petitioner,

v.

JULIO HERNANDEZ ET AL.,

Respondents.

CASE NO. 2:26-cv-02747-JNW

ORDER GRANTING PETITION FOR HABEAS CORPUS

This matter comes before the Court on Petitioner Alondra Berenice Medina Romero's petition for a writ of habeas corpus. Dkt. No. 1. Medina Romero challenges her bond denial and continued detention in immigration custody, arguing that the Immigration Judge's ("IJ") bond denial was constitutionally deficient. The Court GRANTS the petition for the reasons stated below.

## 1. BACKGROUND

On January 29, 2026, the Honorable Tiffany M. Cartwright found that Medina Romero was subject to discretionary detention under 8 U.S.C § 1226(a) based on her membership in the bond denial class certified in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), aff'd sub nom. *Rodriguez Vazquez*

*v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), and ordered Respondents to either release her or provide her with a bond hearing. *Medina Romero v. Hermosillo*, No. 2:26-CV-00118-TMC, 2026 WL 237516, at *1–2 (W.D. Wash. Jan. 29, 2026). On February 12, 2026, the IJ held that hearing and denied bond, finding that Medina Romero posed a flight risk. Dkt. No. 10 at 3. The IJ's order is a one-page form. It checks boxes marked "Flight Risk," "Conditional release is: denied," and "Ability to pay considered." *Id.* It states no finding and gives no reasons. The IJ ruled orally as well, but he identified no evidence or testimony to support the flight risk finding. Dkt. No. 3 ¶ 6. There is no transcript or recording of the hearing. Dkt. No. 3 ¶¶ 7–8. Medina Romero reserved but did not ultimately appeal the decision. Dkt. No. 8 ¶ 10.

Medina Romero is a 32-year-old citizen of Mexico, who entered the country without inspection as a minor in 2003. Dkt. No. 2 ¶¶ 2, 5–6. She has lived in Washington ever since. *Id.* ¶ 7. On January 7, 2026, Medina Romero was taken into Immigration and Customs Enforcement (ICE) custody on her way to pick up her children after work. *Id.* ¶ 8. Before her detention, she lived with her two American citizen children who rely on her for daily care. *Id.* ¶ 7. She went to primary, middle, and high school in Washington and has longstanding family and community ties to the United States. *Id.*

Medina Romero's criminal history consists of one misdemeanor. In 2017, she pled guilty to fourth degree assault; the Court suspended all but five days of her sentence, which she served on a work program. Dkt. No. 10 at 26–27. She has had no contact with the criminal justice system since. *Id.*

## 2. LEGAL STANDARD

Federal courts can grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that her detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

## 3. DISCUSSION

### 3.1 The Court has jurisdiction to review Medina Romero's bond decision.

Federal courts have jurisdiction to review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011); *see Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases). "The application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact," which is reviewable by courts. *Wilkinson v. Garland,* 601 U.S. 209, 212 (2024). A bond denial due to community danger or flight risk is such a mixed

question, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

**3.2 The Court waives the prudential exhaustion requirement.**

Respondents' only argument in response to this habeas is that Medina Romero must first exhaust her administrative remedies before the Board of Immigration Appeals (BIA). In immigration habeas cases, administrative exhaustion is prudential, not jurisdictional. *See W.T.M. v. Bondi*, No. 25-cv-2428, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)). Prudential exhaustion is favored when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Even when the *Puga* factors are met, the Court may waive prudential exhaustion if: (i) the administrative remedies are "inadequate or not efficacious," (ii) "pursuit of administrative remedies would be a futile gesture," (iii) "irreparable injury" might result, or (iv) "the administrative proceedings would be void." *See Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004)).

The *Puga* factors do not require exhaustion here. As to the first factor, Medina Romero raises a constitutional challenge to the adequacy of her bond hearing, a claim well suited for federal court review. *Singh*, 638 F.3d at 1203 n.3.

Respondents argue that agency consideration is necessary because Medina Romero's choice not to appeal the bond order precluded "the application of agency expertise," and because the BIA has "subject-matter expertise for individual immigration bond decisions, even if the BIA's review of the bond denial decision would not reach the specific constitutional claim raised in this case." Dkt. No. 7 at 5–6. That may be true, but whether, as a matter of law, the facts can sustain a finding of flight risk or danger requires no agency expertise regardless of whether or not the petitioner appealed. *See Fletes-Velasquez v. Hernandez*, No. C26-1908 TSZ, 2026 WL 1871890, at *2 (W.D. Wash. June 30, 2026) ("because petitioner challenges the constitutional adequacy of a bond hearing ordered by the Court, prudential exhaustion does not apply or is excused or waived" despite petitioner's choice not to appeal).

As to the second factor, this case raises a discrete legal question whose resolution will provide concrete guidance to the immigration court: the extent to which an IJ must engage with contrary evidence and explain a bond decision. Such guidance may reduce the need for future habeas petitions. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025); *W.T.M.*, 2026 WL 262583, at *2.

As to the third factor, Respondents argue that the BIA can review evidentiary findings without the need for judicial review. When the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error. *See Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 WL 969764, at * 4 (W.D. Wash. Apr. 10, 2026).

Even if the *Puga* factors required exhaustion, the Court would waive the requirement because irreparable injury would result. Medina Romero has been detained since January 2026. She is a single mother, survivor of domestic violence, and primary caretaker for two minor U.S. citizen children. Dkt. No. 2 ¶ 7. In detention, she describes being "fed food that is not fully cooked" including "raw chicken" which "has made [her] sick" and that "[m]ost of the time the water is not clean" and "looks like it's muddy water." Dkt. No. 2 ¶ 10. That uncontradicted showing of mental and physical harm demonstrates irreparable harm under *Laing*. *Mahashin v. Hernandez*, No. 2:26-CV-01804-JHC, 2026 WL 1733519, at *2 (W.D. Wash. June 16, 2026).

Respondents do not contest the conditions of detention Medina Romero describes but only that her claim that "irreparable injury will result does not make sense at this juncture" because, had she appealed the IJ's bond decision, "it is entirely possible she would have already received a determination from the BIA." Dkt. No. 7 at 7–8. Government data reflects an average processing time of 204 days for BIA bond appeals. *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). Medina Romero likely would not have received a decision by the time she filed her habeas petition. Requiring her to wait a full six months *or more* for BIA review would inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process. *See W.T.M.*, 2026 WL 262583, at *3; *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026); *Zavala Sandoval v. Hernandez*, No. 2:26-CV-01198-JNW, 2026 WL 1661379, at *3 (W.D. Wash. June 9, 2026) (waiving exhaustion where

administrative remedies were "inadequate or not efficacious" even when it was not clear Petitioner appealed the bond denial). Medina Romero "should not be required to appeal simply to obtain an explanation for her continued detention" and, even if successful, "she will have suffered irreparable injury during the long wait." *Roberts v. Scott*, No. 2:26-CV-01333-TL, 2026 WL 2071146, at *4 (W.D. Wash. July 17, 2026).

Accordingly, the Court waives any exhaustion requirement.

**3.3 The IJ's bond denial was an abuse of discretion.**

Habeas courts review an IJ's bond determination for abuse of discretion. *Martinez*, 124 F.4th at 784–85. The Court may determine whether the IJ applied the correct legal standard; it may not reweigh the evidence. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)); *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026) (in reviewing discretionary bond determinations, federal district courts are "not required to countenance a sham").

In making bond determinations, IJs consider the *Guerra* factors:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Numerous courts in this Circuit have found due process violations where IJs abuse their discretion in bond determinations.[1]

Here, many of the *Guerra* factors strongly favor Medina Romero. She has over two decades of continuous, stable residency in the United States, a fixed address in Washington, is employed, strong community ties, and two American citizen children for whom she is the primary caregiver. Dkt. Nos. 2 ¶¶ 5–7, 10. There is no evidence that Medina Romero has a negative record of appearance in court or that she has attempted to flee prosecution or escape authorities. Her removal case is pending with the BIA, giving her a strong incentive to appear for future proceedings. Dkt. No. 8 ¶ 14.

Even assuming the IJ's decision was based on Medina Romero's criminal history, this does not support bond denial either. She has one conviction from 2017 for fourth degree assault, for which she served no jail time. Although a noncitizen's criminal record is relevant in a bond assessment, "the recency and severity of the offenses must be considered." *Singh*, 638 F.3d at 1206. "[E]vidence of criminal conduct grows less powerful as it becomes less current[.]" *Aguirre-Urbina v. Wilcox,*

[1] *See e.g.*, *W.T.M. v. Bondi*, No. 2:25-cv-02428-RAJ-BAT, 2026 WL 262583, at *3–4 (W.D. Wash. Jan. 30, 2026); *Soriano v. Hernandez*, 2026 WL 969764, at *4–6 (W.D. Wash. Apr. 10, 2026); *Zambrano-Vazquez v. Noem*, No. 26-cv-122-RSM, 2026 WL 657129, at *4 (W.D. Wash. Mar. 9, 2026); *Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *6–7 (S.D. Cal. Apr. 16, 2026); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004–05 (N.D. Cal. 2018); *Garcia v. Hyde*, 2025 WL 3466312, at *7–11 (D.R.I. Dec. 3, 2025); Garcia Ortiz, 2026 WL 948275, at *3–4.

No. C18-1743 TSZ, 2019 WL 2161644, at *1 (W.D. Wash. May 17, 2019) (citation omitted). And "not every criminal record would support a finding of dangerousness." *Singh*, 638 F.3d at 1206 (citing *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008)). One misdemeanor conviction from almost a decade ago, followed by nearly a decade of law-abiding conduct, cannot sustain a finding of flight risk. And the IJ's decision does not explain how that offense outweighs the evidence of Medina Romero's good character and community ties. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004–05 (N.D. Cal. 2018) (concluding IJ abused their discretion in denying bond based on pending criminal charge that, without more, did not serve as "probative and specific" evidence of criminal activity).

Even so, the IJ denied bond without any articulated basis for the decision. Dkt. No. 3 ¶ 6; Dkt. No. 10 at 3. As Petitioner argues, there is no evidence that the IJ considered the *Guerra* factors or applied them to the set of facts he was presented in this case. Dkt. No. 1 ¶ 31. There is no record of the IJ considering the extensive evidence of Medina Romero's strong family and community ties, including five letters of support. Dkt. No. 10 at 19–25. An IJ must meaningfully engage with contrary evidence and a failure to do so constitutes an abuse of discretion. *See, e.g.*, *Soto Gimenez v. Hernandez,* No. 2:26-cv-00966-GJL, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026) (failure to engage with evidence and absence of articulated reasoning constitutes an abuse of discretion); *Miri v. Bondi,* No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *8–9 (C.D. Cal. Mar. 5, 2026) (finding an abuse of discretion where an immigration judge did not explain the reasons for denying bond); *Garcia v. Hyde*, No. 25-cv-585-JJM-PAS, 2025 WL 3466312, at *10 (D.R.I.

Dec. 3, 2025) (abuse of discretion to disregard contrary evidence submitted by petitioner that his arrest warrant was inactive).

The IJ's bond denial does not rationally apply the governing legal standard and the facts and evidence here. No reasonable adjudicator could conclude on this record that Medina Romero poses a flight risk. Respondents do not address or contest this argument. The IJ's decision was an abuse of discretion, and Medina Romero's continued detention violates due process.

**3.4 The appropriate remedy is immediate release.**

Having found that the IJ's decision to deny bond was an abuse of discretion, the Court must determine the appropriate remedy. "Federal courts have a fair amount of flexibility" in fashioning habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). The Court could order another bond hearing, but it declines to do so. Medina Romero has already had one hearing, ordered by this Court, and it produced nothing a court can review. Respondents do not defend the hearing or argue that this record supports a flight-risk finding, and another round of process would only prolong a detention that has already run more than seven months.

Where, as here, a noncitizen detained under § 1226(a) is found not to be a flight risk or danger to the community, there is no lawful basis for continued detention. *See Vasquez Lopez*, 2026 WL 984151, at *4 (ordering immediate release where continued custody did not serve an immigration purpose after IJ abused their discretion in finding that petitioner posed a flight risk and danger to the community); *W.T.M.*, 2026 WL 262583, at *5 (ordering immediate release due to

process violations in bond hearing); *Soriano*, 2026 WL 969764, at *6 (finding same). Accordingly, the Court orders Medina Romero's immediate release.

### 4. CONCLUSION

Accordingly, the Court ORDERS the following:

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. Respondents must release Petitioner from custody within TWENTY-FOUR (24) hours of this Order.
3. Respondents must file a status update within FORTY-EIGHT (48) hours of this Order, confirming that Petitioner has been released from custody.
4. Petitioner may not be re-detained without at least SEVEN (7) days' advance written notice and a pre-deprivation hearing before a neutral decisionmaker, unless probable cause exists for believing Petitioner has committed or is attempting to commit a criminal offense.
5. Petitioner moves to strike paragraphs 35 through 37 of her own Petition, which she says contain facts from another case. Dkt. No. 11 at 3 n.1. But the proper vehicle for correcting one's own filing is a praecipe. For this reason, the motion is DENIED. Petitioner may file a corrected petition within SEVEN (7) days of this Order. The Court has not relied on paragraphs 35 through 37.
6. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's

fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 31st day of August, 2026.

Jamal N. Whitehead
United States District Judge